# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHRISTIANA JENSEN,**
        **Plaintiff,**

   v.                                                                   **Case No. 17-C-0755**

**NANCY A. BERRYHILL,**
**Acting Commissioner of the Social Security Administration**
        **Defendant.**

## DECISION AND ORDER

Plaintiff Christiana Jensen filed this action for judicial review of an unfavorable administrative decision on her social security disability claim. On April 25, 2018, I remanded the case based on errors in the Administrative Law Judge's evaluation of the medical opinions, aspects of plaintiff's testimony, and the vocational evidence. Jensen v. Berryhill, No. 17-C-0755, 2018 U.S. Dist. LEXIS 70500 (E.D. Wis. Apr. 25, 2018). On July 18, 2018, plaintiff filed a motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## I. ENTITLEMENT TO AN AWARD

Under the EAJA, the court will award attorney's fees to the "prevailing party" in any civil action brought against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1); see Stewart v. Astrue, 561 F.3d 679, 683 (7th Cir. 2009) ("The EAJA provides that a district court may award attorney's fees where (1) the claimant was a 'prevailing party,' (2) the government's position was not 'substantially justified,' (3) no special

circumstances make an award unjust, and (4) the claimant filed a timely and complete application with the district court.").

Plaintiff is the prevailing party in this action, as I reversed the unfavorable decision on her claim, remanded the matter pursuant to 42 U.S.C. § 405(g), sentence four, and directed that judgment be entered in her favor. See Shalala v. Schaefer, 509 U.S. 292, 300-02 (1993). Plaintiff's motion, filed within 30 days of when the judgment became final and not appealable, see 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G), is timely, and the Commissioner does not argue that her position was substantially justified or that special circumstances would make an award unjust. See Church v. Astrue, 496 F. Supp. 2d 964, 966 (N.D. Ind. 2007) ("Under the EAJA, the government bears the burden of proving that its position was substantially justified."); Wirth v. Barnhart, 325 F. Supp. 2d 911, 913 (E.D. Wis. 2004) ("The Commissioner bears the burden of demonstrating that her position was substantially justified or that special circumstances would make an award unjust."). Plaintiff is, accordingly, entitled to an award.

## II. AMOUNT OF THE AWARD

A litigant seeking EAJA fees is required to demonstrate that the amount requested is reasonable. Lechner v. Barnhart, 330 F. Supp. 2d 1005, 1011 (E.D. Wis. 2004). She must submit evidence supporting both the hours and rates claimed. Neave v. Astrue, No. 07-C-301, 2008 U.S. Dist. LEXIS 90672, at *2-3 (E.D. Wis. Feb.4, 2008). If the documentation of time spent is inadequate, the district court may reduce the award accordingly. Id. at *3. The court may also exclude hours that are excessive, redundant, or otherwise unnecessary. Palmer v. Barnhart, 227 F. Supp. 2d 975, 979 (N.D. Ill. 2002). Parties seeking fees under the EAJA are further expected to exercise reasonable billing judgment. See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) ("Hours that are not properly billed to one's client also are not properly billed

to one's adversary pursuant to statutory authority.").

As for the rate, the EAJA contains a presumptive cap of $125 an hour, although courts may award enhanced fees where they are justified because of an increase in the cost of living. Sprinkle v. Colvin, 777 F.3d 421, 423 (7th Cir. 2015); see 18 U.S.C. § 2412(d)(2)(A) ("The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee."). An EAJA claimant seeking a cost-of-living adjustment to the rate need not offer proof of the effects of inflation on the particular attorney's practice or proof that no competent attorney could be found for less than the requested rate. Sprinkle, 777 F.3d at 423. Instead, an EAJA claimant may rely on a general and readily available measure of inflation such as the Consumer Price Index ("CPI"), as well as proof that the requested rate does not exceed the prevailing market rate in the community for similar services by lawyers of comparable skill and experience. Id. An affidavit from an attorney attesting to the prevailing market rate in the community may suffice to meet this burden. Id.

Here, plaintiff seeks fees in the amount of $11,341.00, based on a total of 58.10 hours worked and a rate of $195/hour for 2017 and $200/hour for 2018. She submits a time sheet documenting the hours spent, which counsel avers were reasonable and necessary to provide good representation. Plaintiff further relies on the CPI-U (covering all urban consumers) in seeking an increase in the rate based on inflation. Finally, she submits an affidavit from an attorney experienced in social security matters indicating that on a non-contingent, hourly basis counsel's legal services are worth about $250-280 per hour.

The Commissioner challenges the amount requested, both as to time and rate.

**A.     Time**

The Commissioner argues that counsel did not adequately itemize the time entries. She notes that most of the hours requested – about 52 of 58 – are described only as "briefing." The Commissioner contends that she cannot ascertain whether "briefing" consisted of reviewing the record, researching, drafting, editing, or one of the many other tasks associated with summary judgment motions in disability cases. She notes that fee requests must be "supported by an itemized statement," Comm'r v. Jean, 496 U.S. 154, 158 (1990), and that courts have reduced time for vague billing entries. See, e.g., Trump v. Colvin, No. 12 C 6194, 2015 U.S. Dist. LEXIS 25269, at *14-16 (N.D. Ill. Mar. 2, 2015); Habitat Educ. Ctr., Inc. v. Bosworth, Nos. 03C1023, 03C1024, 04C0254, 2006 U.S. Dist. LEXIS 21922, at *22 (E.D. Wis. Mar. 28, 2006); Cheng v. McCredit, No. 94 C 7520, 1995 U.S. Dist. LEXIS 10112, at *11-13 (N.D. Ill. July 7, 1995). She asks that I reduce plaintiff's recovery for such "briefing" work.

The Commissioner does not indicate by how much I should cut the bill or what methodology I should use to do the cutting. See Smith v. Great Am. Restaurants, 969 F.2d 430, 439 (7th Cir. 1992) ("When attorney's fees are appropriate, . . . the district court may not arbitrarily reduce the number of hours requested; if it reduces hours it should provide a concise but clear explanation.") (internal quote marks omitted). Nor does she cite any authority for requiring the type of itemization she seeks in a case of this sort.[1] See Sosebee v. Astrue, 494

---

[1] In Trump, the problem was not simply vagueness but also the amount of time requested on certain entries. For instance, counsel billed three hours to "Review Jurisdiction" in a case raising no special jurisdictional issue. 2015 U.S. Dist. LEXIS 25269, at *14. Counsel also billed three hours for "Treating Physician's rule," yet the brief counsel filed contained only one short paragraph setting forth the treating physician rule. Id. at *15. Based on these and other problems with the petition, the court trimmed the award from $12,565.89 to $10,452.43. Id. at *1, 18. Habitat was a complex NEPA case, in which counsel attempted to bill for things like "email," "research," "review docs," and "strategy," without explaining how those entries related

4

F.3d 583, 588-89 (7th Cir. 2007) ("[T]he proceeding to recover fees under the [Equal Access to Justice] Act is intended to be summary; it is not intended to duplicate in complexity a public utility commission's rate of return proceeding.") (internal quote marks omitted).

While it might be preferable to break out time more finely (separating record review, legal research, brief drafting, editing, etc.),[2] social security matters are, in this district, treated as appeals, and parties are directed not to file summary judgment motions.[3] Rather, once the case is commenced, the court simply issues a briefing schedule. Accordingly, one would expect that virtually all of a lawyer's time would be spent on briefing. Cf. Lechner, 330 F. Supp. 2d at 1012 (approving 22 hours on the main brief and 11 hours on the reply, on the understanding that subsumed within the 22 hour period was the time counsel spent reviewing the administrative record).

The Commissioner does not contend that plaintiff's counsel billed for more time than is usually spent on similar matters. See Cummings v. Berryhill, No. 14 CV 10180, 2017 U.S. Dist. LEXIS 33502, at *3 (N.D. Ill. Mar. 8, 2017) ("The standard range for hours worked on Social

---

to the claims raised in the case. Id. at *22. I trimmed the bill accordingly. In Cheng, the entries were not just vague but facially "excessive" and "exorbitant." For instance, counsel asked for 160 hours for time spent preparing a habeas petition in a case where the issues were not particularly complex, and 64 hours for the preparation and filing of a 2-page fee application and 12-page supporting brief (which the court called "simply outrageous"). 1995 U.S. Dist. LEXIS 10112, at *12-13. In the present case, although the entries lack detail, that does not prevent me from assessing the reasonableness of the time expended. Ultimately, the amount of detail required of an EAJA petition will vary based on the facts of the case.

[2]Although, as plaintiff notes in her reply brief, the Commissioner does not appear to require such detail in fee petitions filed before the agency. See, e.g., Schulten v. Astrue, No. 08 C 1181, 2010 U.S. Dist. LEXIS 52788, at *16-17 (N.D. Ill. May 28, 2010) (quoting the Programs Operations Management Systems ("POMS"): "1/7/95 Preparation of brief (1.75 hr.)").

[3]http://www.wied.uscourts.gov/sites/wied/files/documents/Social_Security_Procedures_with_Attachments_20140801.pdf.

Security litigation in the Seventh Circuit is 40-60 hours."); see also Harris v. Barnhart, 259 F. Supp. 2d 775, 783 (E.D. Wis. 2003) (collecting cases approving fees in the 54-66 hour range). The record in this case was over 1600 pages, larger than the typical case, and counsel did not represent plaintiff at the administrative level; plaintiff's main brief was 30 pages and the reply 15. Given these circumstances, the total time requested seems reasonable.

**B.     Rate**

The Commissioner argues that the court should apply a cost of living increase based on the Midwest CPI, which covers the geographic region where the case was litigated, rather than the (higher) national rate. By the Commissioner's calculations, use of the Midwest CPI would produce rates of $189.41 for 2017 and $191.86 for 2018.

The Commissioner first asserts that her approach is mandated by the statute, which refers to "prevailing market rates," 28 U.S.C. § 2412(d)(2)(A); by drafting the statute in this manner, Congress presumed that there was no single national market for lawyers. "The reason, of course, is because there is not one; disability attorneys in different geographic areas have differing costs and fees." (R. 22 at 4, citing Coursey v. Comm'r of Soc. Sec., 843 F.3d 1095, 1099 (6th Cir. 2016) (finding the district court "properly relied on evidence – in the form of judicial findings in previous cases – that the prevailing market rate for similar services within its venue was $140 per hour").)

One can make a strong argument that the statutory language actually cuts the other way. The statute created a uniform, nation-wide cap of $125/hour, "notwithstanding the obvious fact that the cost-of-living and the prevailing market rate for legal services vary greatly on a regional and local level throughout the United States." Al Jawad v. Barnhart, 370 F. Supp. 2d 1077, 1085 (S.D. Cal. 2005). "It would be a strange interpretation of a federal statute with

nationwide application to assume that a uniform standard expressly set out in the text would devolve thereafter into a local standard, varying from place to place according to regional economic trends." Id. at 1086 (internal quote marks omitted). Courts have also noted that the statute allows for adjustment based on the cost of living, which suggests a single, nation-wide measure, not a cost of living. Id. at 1085.

As the Commissioner acknowledges, courts within this circuit have not adopted her argument that the statute mandates a particular measure; rather, the district courts have used both the national and regional CPI, "without a clear preference for either," Seabron v. Astrue, No. 11 C 1078, 2012 U.S. Dist. LEXIS 77216, at *10-11 (N.D. Ill. June 4, 2012), and in Sprinkle the Seventh Circuit declined to endorse one or the other, leaving "to the discretion of the district courts whether to adopt the national or regional index in specific cases." 777 F.3d at 428 n.2. Nevertheless, the Commissioner contends that it is appropriate to apply the rate of inflation for the region in which the case was litigated, since the local rate most accurately reflects the prevailing market rate. She cites a number of cases using the regional marker. See, e.g., Vasquez v. Colvin, No. 13 C 6222, 2016 U.S. Dist. LEXIS 20515, at *5 (N.D. Ill. Feb. 19, 2016); Earls v. Colvin, No. 1:11-cv-00435-TWP-TAB, 2013 U.S. Dist. LEXIS 63500, at *3 (S.D. Ind. May 3, 2013); Stokes v. Astrue, 1:09-cv-0972-JMS-TAB, 2010 U.S. Dist. LEXIS 120001, at *3-4 (S.D. Ind. Nov. 10, 2010); see also Kampe v. Astrue, No. 09-C-0888, 2012 U.S. Dist. LEXIS 180225, at *5 (E.D. Wis. Dec. 20, 2012); Heichelbech v. Astrue, 3:10-cv-65-WGH-RLY, 2011 U.S. Dist. LEXIS 129165, at *3 (S.D. Ind. Nov. 7, 2011). The Commissioner indicates that, in the present case, the prevailing rate would be reflected in the Midwest regional CPI, which covers Wisconsin.

The cases cited by the Commissioner using the regional CPI offer little, if any,

7

explanation for that choice. See Cummings, 2017 U.S. Dist. LEXIS 33502, at *5 (discussing post-Sprinkle cases, including Vasquez).[4] Three of the cases she cites – Earls, Kampe, and Heichelbech – were decided under the now discarded Mathews-Sheets requirements, see Mathews-Sheets v. Astrue, 653 F.3d 560 (7th Cir. 2011), overruled by Sprinkle, 777 F.3d at 427, and in Kampe the plaintiff's counsel asked for the Midwest rate (despite the fact that he was based in New York).

Simply adopting the rate for the region in which the court sits overlooks the fact that lawyers from all over the country handle social security cases. In this district, for instance, lawyers from New York, Pennsylvania, Texas, and Illinois regularly appear; in fact, a majority of the social security cases currently pending before me (in which the plaintiff is represented) involve lawyers from out of state. As a result, in the social security context, there does appear to be a national market. Even if a regional CPI would best reflect the "prevailing market rate" for certain matters, social security cases seem to be different.

Some courts advocating for use of a local or regional CPI conclude that it is more fair to "use the cost of living actually experienced by the applicant." Porter v. Astrue, 999 F. Supp. 2d 35, 39 (D.D.C. 2013) (internal quote marks omitted). They note that "using a local or regional CPI avoids the pitfalls of using the national CPI: (1) Depriving an attorney of the actual

---

[4]This is not to say that the explanation often offered for the national measure – that it results in an hourly rate that comes closest to approximating the prevailing market rate – is entirely satisfactory. E.g., Spraggins v. Berryhill, No. 16 C 7304, 2018 U.S. Dist. LEXIS 16831, at *6 (N.D. Ill. Feb. 1, 2018); Cummings, 2017 U.S. Dist. LEXIS 33502, at *5; Monk v. Colvin, No. 2:15-cv-233, 2016 U.S. Dist. LEXIS 112633, at *8 (N.D. Ind. Aug. 23, 2016). As the Commissioner notes, the statute contains a $125/hour cap, regardless of what the rate is for the prevailing market. "After the cap is applied, there can be an increase based on the cost of living, but the increase is simply a boost to the $125 cap, it is not an attempt to turn the capped rate into the prevailing market rate." (R. 22 at 6.) The court should not simply use whichever inflationary measure produces the highest rate.

8

increase in the CPI where he works when that increase (if measured locally or at least regionally) is greater than the increase in the national CPI; or (2) creating a windfall where the national CPI increase is greater than either the applicable local or regional CPI increase." Id. (internal quote marks omitted); see also Simion v. Berryhill, No. 14-cv-1129-CJP, 2017 U.S. Dist. LEXIS 52099, at *3 (S.D. Ill. Apr. 5, 2017) (applying the Midwest CPI because plaintiff's lawyer practices law in that region).

Under this approach, it appears the court would use the rate applicable, not to the city or region where it sits, but to the city or region where counsel works. But this injects unnecessary confusion into what is supposed to be a summary proceeding. What if the lawyer's office is located in New York, the client is located in Milwaukee, and the legal services are performed in both places?[5] "Using the national CPI-U, which applies to the entire United States as a whole, avoids the availability and practicality problems inherent in using the local/regional indexes. The national index provides uniformity regardless of where the legal services were performed or the federal court sits." Al Jawad, 370 F. Supp. 2d at 1088.[6]

Finally, the Commissioner notes fiscal concerns with using the national rate. Even if the

---

[5]In United States v. Eleven Vehicles, 966 F. Supp. 361, 366 n.5 (E.D. Pa. 1997), the government asked the court to use the lower CPI for the Atlanta area because the claimant's lawyer was located and performed most of the services there. Counsel noted that if the court were to use a regional rate, it should apply the higher CPI for the Philadelphia area because the litigation took place in that city. The court decided to use the nationwide CPI-U because services were performed in both locations.

[6]Using a national rate avoids another source of confusion and complexity. Some metropolitan areas have their own local CPI; others do not. Would a court use the local rate, if available, but default to a regional rate, if not? See id. at 1087. Further, the Bureau of Labor Statistics ("BLS") publishes some local rates less frequently, id. at 1087-88, and it acknowledges that a local index may be more "volatile" than the national measure, id. at 1088-89. "Thus, the national index serves as a more reliable source for the CPI-U data." Id. at 1089.

9

rates vary modestly in a particular case, multiplied across the thousands of cases filed each year the amount at issue is not nominal. The Commissioner notes that in 2016 the agency paid out more than $40,000,000 in EAJA fees, and any adjustment, even a minor one, can have significant consequences.

While I am not unsympathetic to the Commissioner's cost concerns, it is unclear whether adopting her approach would lead to overall savings. Use of the regional CPI would produce a lower rate in this case, but in other parts of the country the converse will be true. See, e.g., Bathrick v. Astrue, No. 3:11-CV-00101-VLB, 2015 U.S. Dist. LEXIS 81035, at *6-7 (D. Conn. June 23, 2015); Al Jawad, 370 F. Supp. 2d at 1082. In Al Jawad, for instance, the court concluded that use of the national index better protected the public fisc. Id. at 1087. Just as the court should not use the inflationary measure producing the highest rate, see note 4, supra, it should not select whichever rate is lower solely as a cost saving measure.

\* \* \*

Plaintiff has presented calculations based on the CPI-U, which has been approved by the Seventh Circuit and is frequently used in this district, e.g., Tenhove v. Colvin, No. 12-C-0627, 2013 U.S. Dist. LEXIS 103449, at *3 n.1 (E.D. Wis. July 24, 2013), along with an affidavit from an experienced practitioner that the fee sought is below the prevailing market rate. This is sufficient under Sprinkle. 777 F.3d at 428-29.

Counsel also indicates that he spent a total of 6.3 hours on his 15-page EAJA reply brief, which he seeks to add to the petition. Such hours are compensable, Jean, 496 U.S. at 162, and the time spent here seems reasonable given the nature of the issues and the length of the submission. See Salaam v. Astrue, No. 08-C-0238, 2009 U.S. Dist. LEXIS 16062, at *5-6 (E.D. Wis. Feb. 10, 2009) (approving 5.6 hours for EAJA reply); Lechner, 330 F. Supp. 2d

at 1013 (approving 4.9 hours for EAJA reply); Wirth, 325 F. Supp. 2d at 918-19 (approving 5.8 hours for EAJA reply).

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motion (R. 18) is granted, in the amount of $12,601.00.  Pursuant to Astrue v. Ratliff, 560 U.S. 586 (2010), these fees may be offset to satisfy any preexisting debts that plaintiff owes the United States.  If counsel for the parties verify that plaintiff owes no pre-existing debt subject to offset, defendant shall direct that the award be made payable to plaintiff's attorney pursuant to the EAJA assignment duly signed by plaintiff and counsel.  If plaintiff owes a pre-existing debt subject to offset in an amount less than the EAJA award, defendant shall instruct the U.S. Department of Treasury that any check for the remainder after offset be made payable to plaintiff and mailed to plaintiff's attorney.

Dated at Milwaukee, Wisconsin this 1st day of October, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge